UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE MORALES,

                              **Plaintiff,**

                  -against-                                      20-CV-5274 (ALC)

COMMISSIONER OF SOCIAL SECURITY,        **OPINION AND ORDER**

                              **Defendant.**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Rose Morales ("Morales") brings this action challenging the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision that Morales was not disabled for purposes of entitlement to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(e). (ECF Nos. 14, 19.) For the reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

BACKGROUND

**I.   Procedural History**

      On December 2, 2018, Morales filed an application for SSI benefits, alleging a disability onset date of May 1, 2011. (Record ("R"), ECF No. 11 at 145–46.) She filed a written request for a hearing with an Administrative Law Judge ("ALJ") on May 24, 2018. (*Id.* at 92.) On April 15, 2019, she amended her disability onset date to December 2, 2017. (*Id.* at 161.) Following a hearing on June 7, 2019, the ALJ issued a decision denying her application on July 2, 2019. (*Id.* at 7–22.) On July 8, 2019, Morales submitted a request for review of the ALJ's decision from the Appeals Council. (*Id.* at 209–10). This request was denied and the ALJ's decision was rendered final on May 19, 2020. (*Id.* at 1–3.) Morales filed this action on July 7, 2020, alleging that the

ALJ committed an error of law and asking the Court to reverse the ALJ's findings and enter a finding that Morales is disabled. (Compl., ECF No. 1.) The Commissioner moved for judgment on the pleadings on June 1, 2022. (Def.'s Mot., ECF No. 14.) Plaintiff cross-moved for judgment on the pleadings on September 10, 2022. (Pl.'s Mot., ECF No. 19.)

## II.  Factual Background

### A. Non-Medical Evidence

#### i.  Plaintiff's Background

Morales was 28 years old at the time of onset of her alleged disability on December 2, 2017. (R., ECF No. 11 at 145–45.) She completed education through the ninth grade and was enrolled in a special education program for three years. (*Id.* at 170.) She was employed as a pharmacy cashier in 2008 and as a warehouse packager in 2010, holding each position for approximately one month. (*Id.* at 170.) She was also sporadically employed as a babysitter from 2009 to 2013, during which time her annual income ranged from $12,868.00 to $20,889.00. (*Id.* at 160.) Morales was unemployed for several years prior to the onset of her alleged disability in December 2017, and had no substantial employment between her alleged onset and the ALJ hearing on June 7, 2019. (*Id.* at 32–33.)

#### ii.  Plaintiff's Testimony and Alleged Disability

Since the onset of her alleged disability in 2017, Morales has suffered from frequent headaches, depression, difficulty sleeping, anxiety, paranoia, and anger. (*See, e.g.*, *id.* at 452, 456, 459, 462, 469, 471.) She testified at the hearing that the anxiety she experiences when outside of the home or using public transportation, combined with her inability to go out alone and her frequent headache pain, render her unable to work. (*Id.* at 34–50.)

Since 2015, Morales has been treated by various healthcare providers for major depressive disorder. (*Id.* at 173, 236, 487). During this period, she was diagnosed with post-traumatic stress disorder ("PTSD"), tension headaches, sleeplessness, and anxiety. (*Id.* at 275, 455.) At the hearing, she testified to taking Wellbutrin, Lexapro, and Abilify for management of her symptoms. (*Id.* at 39–40.) She was also prescribed medication for her headaches but found it ineffective and uses the over-the-counter medication Excedrin. (*Id.* at 50, 278.) She also attended biweekly group therapy sessions and bimonthly psychiatry appointments for management of her symptoms. (*Id.* at 39–40.)

Morales' healthcare providers indicated that her life circumstances, especially instability in housing, traumatic events in her childhood, relationships, and finances, are major contributing factors to her depression and anxiety. (*See., e.g., id.* at 216, 221, 244–45, 443, 462.)

    iii.    *Plaintiff's Disability Report*

According to a disability report compiled as part of the SSI application process, Morales is unmarried and has never received any specialized or vocational training. (*Id.* at 168–70.) She is a U.S. citizen and has resided in the country since the alleged onset of her disability. (*Id.* at 168.) At the time of filing, she did not have a permanent address and utilized a P.O. Box in the Bronx, New York. (*Id.* at 44–46, 168.) She states that she has not had gainful employment since June 1, 2008, and stopped working because she was "unable to perform [her] job." At the time of compiling the report, she was prescribed Trazadone, Abilify, Aripiprazole, Lexapro, and Escitalopram for the management of her depression and related mental conditions. (*Id.* at 172.)

    iv.    *Plaintiff's Function Report*

Morales completed a Function Report form on February 26, 2018. She reported feeling depressed and having "flashbacks of [her] past", which limited her daily activities and prevented

her from leaving the house as often as she did before the alleged onset of her disability. (*Id.* at 184, 187–88.) She noted that she felt fearful of others when she left the house, and that she no longer socialized with anyone. (*Id.* at 187–89.) Morales wrote that she had no issues maintaining personal care or taking medication, and she did not require assistance in preparing daily meals, washing clothes, mopping, paying bills, counting change, or using public transportation. (*Id.* at 184–88.) She also said she could pay attention, complete tasks, listen to authority figures, and follow written and spoken instructions. (*Id.* at 190–91.)

       v.     *Vocational Expert's Testimony*

At the January 2020 hearing, the ALJ heard testimony from vocational expert ("VE") Esperanza Distefano. The VE testified in response to various employment hypotheticals posed by the ALJ for a person of the same age, educational, and employment background as Morales at different functional capacities. (*Id.* at 51–62.) In the first hypothetical, the VE was asked about appropriate employment for a person with Plaintiff's background who was limited to simple, routine work not done at a production rate pace, with limited interaction with coworkers and supervisors and no interaction with the general public. (*Id.*) The VE identified three representative low to medium exertion unskilled jobs available for such a person: hand packer, hospital cleaner, and housekeeping cleaner. (*Id.* at 54–55.) She opined that a significant number of these jobs were available in the national economy. (*Id.*) The second hypothetical asked about employment for a person who, in addition to the restrictions of the first hypothetical, needed to work in isolation from others. (*Id.* at 55.) The VE testified that there would be no jobs in the national economy for a person with such limitations, and there would be significant erosions in the number of jobs available for a person who was off-task at least fifteen percent of the workday. (*Id.* at 55–57.)

4

B. <u>Medical Evidence</u>

The record contains evidence from several medical sources, including Sheldon Medical Care, Dr. Laura Kerenyi, and Essen Medical and Urgent Care. Morales's daily psychiatric care has been overseen by psychiatrists at Harlem Hospital and Morris Heights Medical Center.

*i.   Harlem Hospital*

From February 9, 2015 to October 17, 2017, Morales received treatment for her preexisting depression and related mental conditions at Harlem Hospital. (*Id.* at 213–27, 234, 522.) She attended twice monthly group therapy sessions and checkups with treating physicians monthly to bimonthly. *(Id.* at 39–40.) Her treatment at Harlem Hospital was overseen by psychiatrists Dr. Jasbir Singh and Dr. Clarisa Atencio. (*Id.* at 211-27, 498–503.) She was prescribed Abilify, Lexapro, and Trazadone for treatment of her depression and anxiety symptoms, with her providers occasionally adjusting the prescribed dosage. (*Id.* at 235–236.)

Over the course of several visits from July 2015 to January 2016, Morales reported having a depressed mood and cited homelessness and financial insecurity as major stressors. (*Id.* at 211–12, 216–18, 221.) Occasionally, Morales reported that her moods fluctuated despite medication, which was typically followed by an adjustment in dosage. (*Id.* at 235–36, 239–40, 252–253.) From September to December 2016, Morales told her physicians that her moods had been improving as a result of compliance with the medication and she was participating well in group therapy. (*Id.* at 217, 221, 226, 248.)

In 2017, Morales continued to attend weekly group therapy and reported that her symptoms were well managed with medication. (*Id.* at 336–37.) She also reported frequent headaches that caused sleeplessness and low energy. (*Id.* at 279.) On May 24, 2017, Morales was prescribed Hydroxyzine, which improved her sleeplessness symptoms. (*Id.* at 338.)

5

On August 21, 2017, Morales visited Metro Urgent Care for what she described as constant headaches of fluctuating strength over the course of three months. (*Id.* at 272–73.) She was referred to a neurologist and prescribed over-the-counter aspirin and acetaminophen after a physical exam returned normal results. (*Id.*) On August 22, 2017, Morales attended a follow-up appointment where she was examined by Dr. Rishi Batra, who found Morales alert and oriented, with no balance problems, chills, fatigue, blurred vision, or speech problems. (*Id.* at 275–76.) She was diagnosed with migraines without aura and prescribed Imitrex and topiramate. (*Id.*)

On September 27, 2017, Morales indicated to her group therapy supervisor that "her relationship [with Edwin Cruz ("Cruz"), her boyfriend] has been abusive for the last few years" and she was offered help. (*Id.* at 502–503, 513.) At a follow-up call with a social worker on October 11, 2017, Morales explained that "she did not like the services that were provided [at Harlem Hospital] and that she and [Cruz] were going to seek treatment elsewhere from the clinic." (*Id.* at 521.) Morales was without a regular medical provider until February 2018. (*Id.* at 523.)

In January 2018, she saw Dr. Tushar Shah at Sheldon Medical Center. (*Id.* at 490.) Morales reported a headache that had lasted a year and underwent a physical exam with results in the normal range. (*Id.* at 492–94.) An MRI exam also returned normal results. (*Id.* at 492.) Further lab testing was ordered and Morales was advised to make dietary and exercise changes. (*Id.* at 494.)

      ii.    *Morris Heights Medical Center*

From February 26, 2018 through January 31, 2019, Morales received outpatient treatment for her depression and other psychiatric conditions at Morris Heights Medical Center. (*Id.* at 443, 487.) During her intake evaluation, licensed mental health counselor Joanna Singh assessed Morales with severe recurrent major depressive disorder and a severe episode of bipolar disorder.

(*Id.* at 487.) Her care was primarily overseen by psychiatrist Dr. Elsie Bermudez, who found that Morales presented with symptoms of major depressive disorder, including depressed mood, insomnia, anxiety, low energy, self-isolation, and fear when traveling on public transportation. (*Id.* at 478.) Dr. Bermudez conducted at least nine mental status exams on Morales between April 2018 and January 2019, all of which showed normal results, aside from occasionally depressed moods. (*Id.* at 443–44, 446–47, 452–53, 459–60, 462–63, 465–68, 471–72, 478–79.) During an appointment on October 25, 2018, Morales told Dr. Bermudez that the Wellbutrin was ineffective, so her prescribed dosage was increased. (*Id.* at 453.) At her appointment on December 6, 2018, Morales informed Dr. Bermudez that she felt the medication had been helping her feel calmer and more optimistic, despite some continued sleeplessness and anxiety. (*Id.* at 446.) Morales' boyfriend—Cruz—was present for several of her examinations with Dr. Bermudez, and Morales "refused" to attend appointments without him. (*Id.* at 449, 465.)

On April 4, 2019, Dr. Bermudez completed a Medical Source Questionnaire about Morales as part of her SSI application. (*Id.* at 495–97.) Dr. Bermudez indicated that Morales had marked limitations in her ability to carry out simple and detailed instructions, sustain an ordinary routine without supervision, make simple work-related decisions, get along with and work alongside coworkers, interact appropriately with the general public, accept instructions and respond to criticism from supervisors. (*Id.* at 496–97.) Dr. Bermudez reported that Morales had extreme limitations in her ability to remember locations and work-like procedures, understand and follow both simple and detailed instructions, maintain attention and concentration for long periods, travel in unfamiliar places or use public transit, and set realistic goals and make plans independently of others. (*Id.* at 496–97.) She also reported that she would expect Morales to be off task during

20% of a normal workday, and diagnosed her with a "severe episode of recurrent major depressive disorder" without psychotic tendencies. (*Id.* at 496–97.)

        *iii.*        Dr. Laura Kerenyi Consultation

On March 6, 2018, Morales attended a psychiatric consultative examination with Dr. Laura Kerenyi, Ph.D., at Industrial Medicine Associates. (*Id.* at 265.) Morales attended the examination with Cruz, who Morales described as her uncle. (*Id.*) Morales told Dr. Kerenyi that she had difficulty falling asleep, and suffered from a dysphoric mood that included guilt, hopelessness, fatigue, irritability, and loss of usual interests, and said she was not attending therapy at the time of the examination. (*Id.*) Morales denied any symptoms of social phobia, panic attacks, or other cognitive symptomology, and reported a family history of significant depression. (*Id.* at 266.) Dr. Kerenyi noted that the Plaintiff's demeanor was cooperative, her hygiene and appearance were good, and her thought process was clear, but that her affect appeared flat. (*Id.* at 265–67.) Dr. Kerenyi also reported that the Plaintiff's alertness and memory skills were intact, and that she could perform simple calculations. (*Id.*) However, she noted that Morales' recent and remote memory skills were somewhat impaired, and her intellectual functioning appeared below average. (*Id.*) Dr. Kerenyi further noted that Morales could dress, bathe, groom, and cook and prepare food for herself, as well as manage her money and perform general cleaning, and was not limited in her ability to understand, remember, and apply simple instructions. (*Id.* at 268.) Dr. Kerenyi also noted that Morales was somewhat limited in remembering and applying complex instructions and interacting adequately with supervisors and coworkers. (*Id.*) Dr. Kerenyi diagnosed Morales with unspecified depressive disorder that, overall, did not appear significant enough to interfere with her ability to function on a daily basis. (*Id.* at 268.)

**LEGAL STANDARDS**

I. **Standard of Review**

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) and can set aside the final decision if there is no "substantial evidence" supporting it or upon the application of an incorrect legal standard. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F. 3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). The same standard as motion to dismiss for failure to state a claim under Rule 12(b)(6) governs motions for judgment on the pleadings. *Regan v. Kijakazi*, No. 1:21-CV-03534 (ALC), 2022 WL 4592897, at *5 (S.D.N.Y. Sept. 30, 2022).

II. **Determining Disability**

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Further, a claimant's subjective complaints about their symptoms are, alone, not enough to establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). These complaints must be corroborated by a medical condition that reasonably could be expected to result in the conditions that, considered with all other evidence, demonstrate that the claimant is disabled. Where subjective claims are not completely supported by the Administrative Record, the ALJ will consider the frequency and duration of the symptoms, precipitating and aggravating factors, the effect of medication, treatment, functional restrictions, and Claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A district court can only reject facts determined by the ALJ "if a reasonable factfinder would have to conclude otherwise." *Ortiz v. Saul*, No. 19-cv-942, 2020 WL 1150213 (S.D.N.Y. Mar. 2020) (quoting *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012)). Thus, the Court "may not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" *Briody v. Commissioner of Social Security*, No. 18-cv-7006, 2019 WL 4805563, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted)).

"The Commissioner of Social Security has promulgated regulations that set forth a five-step sequential evaluation process to guide disability determinations." *Cichocki v. Astrue*, 729 F.3d 172, 174 n. 1 (2d Cir. 2013) (internal citation omitted). The Second Circuit describes this process as:

> (1) First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> (2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

> (3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him per se disabled.
>
> (4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity2 to perform his past work.
>
> (5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (alterations omitted).

The Commissioner only has the burden to prove the fifth step, with the plaintiff having the burden for the preceding steps. *Id.* "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on other grounds on reh'g*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

## DISCUSSION

### I. The ALJ's Decision

On July 2, 2019, the ALJ issued a decision finding that Morales had not met her burden of proof to show that she was disabled. Applying the five-step sequential evaluation for Social Security disability claims, the ALJ found at step one that Morales had not engaged in substantial gainful activity since her application date in December 2017.

At step two, the ALJ found that Morales had severe impairments of depression and PTSD, which severely limit her ability to perform basic work activities. (*Id.* at 12.). The ALJ further found that Plaintiff's migraine condition was non-severe, based on her medical records, noting that

11

Plaintiff received normal results from an MRI, treats the condition with over-the-counter medication, and does not see a neurologist. (*Id.* at 12.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the medical severity of those listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (*Id.* at 13.) The ALJ found that Morales had mild limitations in understanding, remembering, and applying information, and in adapting and managing herself. (*Id.* at 13.). The ALJ found that she had moderate limitations in interacting with others and in concentrating, persisting or maintaining pace. (*Id.*).

At the fourth step of the sequential evaluation, the ALJ determined that Plaintiff was unable to do her past relevant work, and so he continued to the fifth step of the sequential evaluation. (*Id.* at 17.)

At step five, the ALJ found that Morales had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but limited to simple, routine work not done at a production pace. (*Id.* at 14.). The ALJ also found that Plaintiff should be limited to occasional interaction with supervisors and coworkers and no interaction with the general public. (*Id.*) The ALJ considered Morales' age, education, and work experience, her residual functional capacity, and the VE's testimony. (*Id.* at 17–18.). The ALJ found that Plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy and issued a finding of "not disabled." (*Id.* at 18.)

Morales testified that her uncle accompanied her to the hearing; however, after excusing Plaintiff and the man from the proceedings, the ALJ recognized him to be Cruz, her boyfriend. (*Id.* at 26, 265.) The ALJ discussed the issue with Plaintiff's attorney, noting that Cruz has been present with Plaintiff during several of her medical appointments, and asked whether it would be

prudent to ask Morales if she had been pressured into giving testimony by Cruz. (*Id.* at 62–65.) However, the ALJ ultimately decided against raising the issue with Morales, because "the downside outweighs whatever probative value it has" given the history of domestic abuse Plaintiff had reported involving Cruz. (*Id.* at 65.) Citing the incident in his final findings report, the ALJ noted that he "did not confront the claimant or Mr. Cruz as to why they had falsely represented Mr. Cruz as her uncle" because "the potential value of this information was outweighed by the potential harm to the claimant given the history set forth in [the record]," but that he was "noting this inconsistency between [Plaintiff's] testimony and the facts established by the medical records in this case." (*Id.* at 16.)

## II.   The ALJ Relied on Facts Supported by Substantial Evidence

Plaintiff asserts the ALJ's determination that she is not disabled is erroneous, arguing that: (1) certain facts upon which the ALJ based his decision are not supported by substantial evidence; (2) the ALJ "cherry-picked" evidence in determining the Plaintiff's RFC; and (3) the ALJ committed an error of law by relying on impermissible factors to determine Plaintiff's RFC. (Pl.'s Mem., ECF No. 15 at 13–7.) The Court concludes that the ALJ did not err and that the ALJ's decision was supported by substantial evidence. The Court will address each of Plaintiff's contentions in turn.

### A.   The ALJ's Determination of Plaintiff's Education Level Was Not Erroneous

Plaintiff contends that the ALJ's finding that she has "at least a high school education," as noted in the final decision, is not supported by substantial evidence. (Pl.'s Mem., ECF No. 20 at 13–15.) Instead, Plaintiff argues that because she left school in the ninth grade, her education level should have been considered "limited" rather than at the high school level, and because the RFC

13

determination based in part on Plaintiff's education, remand is necessary to determine the impact of her limited education on her ability to adjust to other work. (*Id.* at 18.)

The Court disagrees. First, the SSA makes clear that a claimant's education level is not dispositive in determining her ability to work and the weight afforded to education in the ALJ's assessment "may depend upon how much time has passed between the completion of [the claimant's] formal education and the beginning of [her] physical or mental impairment(s) and by what [she] has done with [her] education or work in another setting." 20 CFR § 404.1564(b). The ALJ's decision states that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R., ECF No. 11 at 19.) Neither the ALJ's report nor the record suggest that the Plaintiff's education was a controlling factor in the ALJ's determination that the Plaintiff was not disabled.

Second, although the record does not indicate whether the VE's testimony was based on the Plaintiff having a ninth-grade education or a high school education, it would have little to no bearing on her ability to perform the three unskilled jobs that the VE indicated as appropriate given Plaintiff's limitations. The VE testified that the low-to-medium exertion jobs of hand packer, hospital cleaner, and housekeeper were all appropriate for Morales and were available in large numbers in the national economy. (*Id.* at 54–55.) Each of these jobs is considered unskilled, which the SSA defines as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 CFR § 404.1568(a). Plaintiff reported that she was capable of performing simple, low-contact work like cooking, cleaning, managing finances,

and adhering to a daily schedule, which are consistent with the simple, non-production pace, low-contact work indicated by the VE and well-supported in the record. (R., ECF No. 11 at 13–17.)

As a result, the ALJ's final decision satisfies the burden under the "very deferential" substantial evidence standard. *Brault*, 683 F.2d at 448; *see also Johnson v. Astrue*, 563 F.Supp.2d 444, 454 (S.D.N.Y. June 26, 2008) ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists"). Accordingly, Plaintiff's request for remand on this ground is denied.

B. <u>The ALJ Properly Weighed the Medical Evidence in the Record</u>

Next, Plaintiff argues the ALJ "cherry-picked" facts from the record in making his RFC determination, specifically that he overly relied on portions of Dr. Bermudez's notes which established Plaintiff's mental examinations to be in the normal range and did not credit the evidence in the record establishing that Plaintiff needed to work in isolation. (Pl.'s Mem., ECF No. 20 at 15–16.)

The RFC determination is "the most [a claimant] can still do despite [her] limitations," and is based upon all the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ's RFC findings must "afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotations omitted). The relevant regulations require an ALJ to weigh medical opinions based on the factors discussed in *Burgess*: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, but the ALJ need only explicitly explain how the first two factors were considered. *Burgess*, 537 F.3d at 127; 20 C.F.R. § 404.1520c(b)(2).

The Court finds that the ALJ's findings regarding the weight afforded to Dr. Bermudez's medical opinion were supported by substantial evidence. The ALJ found that Dr. Bermudez's medical source questionnaire responses were "unpersuasive" and lacked support in the record. (R., ECF No. 11 at 17.) Specifically, the ALJ noted that "Dr. Bermudez indicated that Plaintiff suffered from extreme limitations in understanding and memory even though she also consistently noted memory to be intact…on mental status exams." (*Id.*) The ALJ noted that these limitations were "completely inconsistent with Dr. Bermudez's own medical notes" and the claimant's ability to work over "a number of years." (*Id*.) The ALJ also noted, and the record reflects, that Plaintiff's medical history from Morris Heights shows intact and normal ranges for concentration, speech, and orientation during all appointments in which she was given a mental status evaluation. (*Id.* at 443, 446, 452, 459, 462, 468, 471, 479, 485.) Her medical records also indicate that Plaintiff had intact memory and attention for all but two appointments, one in which she demonstrated "minimally impaired attention" and another in which she had "recent limited memory", but that on both occasions her immediate memory was intact. (*Id.* at 479, 485.) Furthermore, four mental status exams list Plaintiff's mood as "depressed," one exam notes her mood as "irritable" and "anxious," and a sixth exam lists her mood as "anxious." (*Id.* at 443, 459, 465, 471, 479, 485.) The remaining mental status exams list Plaintiff's mood as "normal." (*Id.* at 446, 452, 462, 468, 471.) These findings do not support Dr. Bermudez's questionnaire responses indicating that Plaintiff's had "marked" limitations in understanding and memory. (*Id.* at 16–17.) Thus, the ALJ's findings regarding Dr. Bermudez's records were not "cherry-picked" and were supported by substantial evidence in the record.

Though Plaintiff may disagree with the ALJ about how much weight to afford certain facts over others, the ALJ's RFC determination adequately considered the full breadth of her medical

16

records, applied the correct legal standard, and is supported by substantial evidence. *See Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. Sept. 27, 2016) ("[plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.") In his decision, the ALJ acknowledged that "the records do detail the claimant's fluctuating symptoms of sleep disturbance and fatigue with stressors" but also noted that these had been well-controlled by her treatment regimen. (R. ECF No. 11 at 15.) Contrary to Plaintiff's assertion that the ALJ failed to consider Dr. Bermudez's July 2018 medical examination report, this statement appears to encompass Dr. Bermudez's notes from that visit, including that the Plaintiff "admits feeling anxious and has difficulty sleeping". (*Id.* at 462.) Further supporting the ALJ's RFC determination are the medical examination notes from the December 2018 appointment, which state that the Plaintiff thought "her current medication regime [wa]s helpful." (*Id.* at 446.) Thus, substantial evidence in the record ultimately supports the ALJ's findings.

Additionally, Plaintiff argues that the ALJ failed to properly weigh evidence that Plaintiff must work in isolation. Plaintiff relies on a specific instance in the VE's testimony, when the ALJ asked about employment prospects for a hypothetical person with the Plaintiff's limitations and background who "needed to work in isolation from others." (*Id.* at 55.) The VE answered that "there may be some jobs, but they do not exist in numbers that [she] would consider significant." (*Id.*) In his decision, the ALJ restricted Plaintiff's RFC determination to limited interaction with co-workers and supervisors and no interaction with the general public. (*Id.* at 14.) Although the record supports Plaintiff's assertion that she feels anxious on public transportation and around others (*id.* at 34), other evidence in the record supports the ALJ's finding. Specifically, Plaintiff testified that she was able to attend group therapy meeting each week, accompany her roommate grocery shopping, and take public transportation when necessary. (*Id.* at 34–7.) As Defendant

notes, this satisfies the burden of substantial evidence to support the ALJ's RFC determination. *See Natrella v. Comm'r of Soc. Sec.*, 2020 WL 1041067, at *6 (S.D.N.Y. Mar. 3, 2020) ("[T]he ALJ acknowledged that [claimant] reported difficulty in interacting with others, but cited evidence of his daily activities and ability to attend AA meetings in support of [the ALJ's] conclusion that [claimant] retained the ability to occasionally interact with others in a work setting.") Accordingly, Plaintiff's request for relief on this basis is denied.

    C.  The ALJ Did Not Rely on Impermissible Factors to Determine Plaintiff's RFC

Finally, Plaintiff argues that the ALJ relied on impermissible factors when determining Plaintiff's RFC. In his decision, the ALJ noted that Plaintiff had "falsely presented" the man who attended the hearing as her uncle, but that the ALJ suspected that the man was actually Plaintiff's boyfriend—Cruz—with whom Plaintiff had previously said she had been in an abusive relationship. (*Id.* at 62–65.) On this basis, Plaintiff argues that the ALJ impermissibly relied on this inconsistency in Plaintiff's testimony in making his RFC determination because it was unrelated to her impairment or symptoms. (*Id.* at 15–6.)

The Court disagrees, finding that there is no evidence that the ALJ relied on this apparent inconsistency in making his RFC determination. While the ALJ did refer to the incident in the RFC section of his final report, writing that he "undertook an inquiry of the claimant's representative to determine if the claimant was being pressured in her testimony or being unduly influenced by Mr. Cruz" (*Id.* at 15–16), this inquiry was not ultimately the basis of the ALJ's determination, as the ALJ noted on the record. (*Id.* at 64 (noting that the incident "[was] not really relevant to my decision here.").) Rather, the ALJ determined that "the potential value of this information was outweighed by the potential harm to the claimant" given the history of domestic violence allegations set forth in the record, choosing not to confront Plaintiff about this

inconsistency in Cruz's presence. (*Id.* at 16.) He did, however, note on the record that the potential for undue influence was "of particular concern" since Cruz was present for many of Plaintiff's medical appointments and her consultative examination. (*Id.* at 499, 501–503).

In evaluating a claimant's assertion of an alleged symptom or limitation, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d. Cir. 2010) (internal citations and quotations omitted). In making this determination, "[t]he ALJ must consider statements the claimant or others make about [their] impairment(s), [their] restrictions, [their] daily activities, [their] efforts to work, or any other relevant statements [they] make[] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings." *Id.* (internal quotations and citations omitted).

Here, the ALJ relied on four facts in order to reach the determination that: "the claimant's allegation of the nature, intensity, persistence, limiting effects, of [her] symptoms [was] not consistent with the medical signs, laboratory findings, and/or other evidence of record which limit the capacity for work-related activities." (R., ECF No. 11 at 17.) First, he noted that Plaintiff's admission that she "can cook, clean, manage money and adhere to a daily schedule" are "daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*) Second, he noted the treatment Plaintiff received for the allegedly disabling impairments is "essentially conservative/routine in nature," and "would not prevent the claimant from engaging in the above residual functional capacity." (*Id.*) Third, the ALJ noted that "the record does not contain any non-conclusory opinions, supported by clinical or laboratory evidence, from treating or examining physicians indicating the claimant is currently

disabled." (*Id.*) Fourth, the ALJ wrote that "the claimant's symptoms and related limitations are not consistent with the evidence of record," for example the "normal range" mental status examinations performed by Dr. Bermudez. (*Id.*) In other words, Plaintiff's credibility regarding Cruz's identity was not among the evidence considered by the ALJ, and the ALJ did not impermissibly rely on this evidence when making his determination. Accordingly, Plaintiff's request for relief on this ground is denied.

## CONCLUSION

Upon a thorough consideration of the evidence, I find that the Commissioner's final decision is supported by substantial evidence and based upon application of correct legal standards. For the reasons stated above, the Commissioner's motion for judgment on the pleadings is **GRANTED** and Plaintiff's motion for judgment on the pleadings is **DENIED**.

The Clerk of Court is respectfully requested to terminate the pending motions at ECF Nos. 14 and 19 and close this case

**SO ORDERED.**

Dated:   **March 21, 2023**
         **New York, New York**

  **ANDREW L. CARTER, JR.**
  **United States District Judge**